IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAQUENZA M. LILLY #159976, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:24-CV-00066 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| NASHVILLE, TN METRO POLICE | ) |
| DEPARTMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

LaQuenza M. Lilly, an inmate[1] of the Trousdale Turner Correctional Center ("TTCC") in Hartsville, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983, alleging violations of Plaintiff's civil and constitutional rights. (Doc. Nos. 1, 12).

### I. PLRA SCREENING OF THE AMENDED COMPLAINT

Plaintiff has filed an Amended Complaint (Doc. No. 13), which is now the operative pleading in this case.[2] The Amended Complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly

---

[1] In his Amended Complaint, Plaintiff checked the boxes for both "Pretrial detainee" and "Convicted and sentenced state prisoner." (Doc. No. 13 at 4).

[2] In his Amended Complaint, Plaintiff abandoned his claims against the "Nashville TN Metro Police Department" and two John Doe Defendants named in his original complaint and added a claim against Sergeant f/n/u Lester in his individual and official capacities. (*See* Doc. No. 13 at 2-3, 13-1 at 1).

requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## A. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## B. Facts Alleged in the Amended Complaint

The allegations of the Amended Complaint are assumed true for purposes of the required PLRA screening.

The Amended Complaint alleges that on July 10, 2023, Sergeant Holland arrested Plaintiff. After Plaintiff was already subdued, Sergeant Holland allowed his "K-9" to bite Plaintiff. (Doc. No. 13 at 4-5). Sergeant Lester was the acting supervisor at the site. Detectives A. Cavis and K. McCann were also on site. Lester, Cavis, and McCann "watch[ed]" and "turn[ed] a blind eye and let it happen." (*Id*. at 4). Plaintiff sustained an injury to his left hand which required surgery. Plaintiff still cannot move his hand or play sports. He fears he will be unable to work when he is released from prison due to his hand issues. As relief, the Amended Complaint seeks compensatory and punitive damages.

## C. Analysis

The Amended Complaint names four Defendants to this action: Stephen Holland, K-9 Handler of the Nashville Metro Swat Team; Sergeant f/n/u Lester, Swat Team Supervisor; Anthony Cavis, Metro Police Department Detective; and Keenan McCann, Metro Police Department Detective. (Doc. No. 13 at 2-3). All Defendants are sued in their individual and official capacities. (*Id*.)

### 1. Official-Capacity Claims

When a defendant is sued in his or her official capacity as an employee of the government, the lawsuit is directed against "the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Here, the Amended Complaint alleges that Defendants are members of the Metro Nashville Police Department and/or Swat Team. It appears that Plaintiff seeks to hold the Metropolitan Government of Nashville and Davidson County ("Metro") liable for Defendants' actions.

A claim of governmental liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision, or custom promulgated by Metro or its agent.

*Monell Dep't of Social Svcs.,* 436 U.S. 658, 690-691 (1978). In short, for Metro to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official Metro policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. 658, 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Here, the allegations of the complaint are insufficient to state a claim for municipal liability against Metro under Section 1983. The complaint does not identify or describe: any of Metro's policies, procedures, practices, or customs relating to the incidents at issue; any particular shortcomings in training or supervision or how those shortcomings caused the alleged violations of Plaintiff's rights; or any other previous instances of similar violations that would have put Metro on notice of a problem. *See Okolo v. Metro. Gov't of Nashville*, 892 F. Supp.2d 931, 944 (M.D. Tenn. 2012). Consequently, the Court finds that the Amended Complaint does not contain sufficient allegations to state a claim for municipal liability against Metro. Plaintiff's Section 1983 claims against Defendants in their official capacities (which are in substance claims against Metro) therefore must be dismissed.

2. Individual-Capacity Claims

As for Plaintiff's individual capacity claims, the Amended Complaint alleges an excessive-force claim against Holland and failure-to-intervene claims against Lester, Cavis, and McCann.

From the Amended Complaint, it appears that Plaintiff was in the process of being arrested at the time of Holland's alleged use of excessive force. The legal status of an alleged victim of excessive force at the time in question is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision (as determined by such status).

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive-force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Id.* (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original). Plaintiff clearly was not a convicted prisoner at the time he was bitten by Holland's K-9 dog.[3]

---

[3] As indicated herein, the Eighth Amendment protects inmates serving sentences of imprisonment after conviction. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment."). In the case of state actors like Defendants, Eighth Amendment protections are applicable (when they are applicable) specifically by way of the

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee—as opposed to a convicted prisoner—from the use of excessive force that amounts to punishment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *See id.* "The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'" *Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 538-39 (6th Cir. 2015) (quoting *Kingsley*, 576 U.S. 389, 397). The Fourteenth Amendment analysis is the more applicable analysis here.

The case of *White v. Harmon*, No. 94-1456, 1995 WL 518865 (6th Cir. Aug. 31, 1995), is instructive. In *White*, a canine handler requested that two officers, who already had apprehended and handcuffed a fleeing suspect, hold off on placing the suspect in a police car until the handler and his dog arrived at the scene. When the canine handler arrived, the officers yanked the suspect to his feet. At that time, the dog bit the suspect in the right elbow. The canine handler called off the dog but failed to do so in time to prevent injury to the suspect. *Id*. at *1. The suspect sued the officers under Section 1983, claiming that they violated the Fourth Amendment's bar against

---

Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts generally speak in terms of "Eighth Amendment" protection without any reference (beyond an initial reference) to the Fourteenth Amendment. As noted herein, Eighth Amendment protection is inapplicable in the present case.

    By contrast, as also indicated herein, the Due Process Clause of the Fourteenth Amendment provides the same kind (though somewhat broader) protection to pretrial detainees. Such protection is generally referred to by courts as "Fourteenth Amendment" protection without any reference (beyond an initial reference) to the Due Process Clause. As noted herein, Fourteenth Amendment protection is applicable in the present case.

unreasonable seizures by using excessive force, and the district court denied summary judgment. On appeal, the Sixth Circuit affirmed the denial of summary judgment as follows:

> Viewing the evidence in the light most favorable to the plaintiff, Clewett [the canine handler] requested, for no apparent reason, at least no reason found in the record, that other officers postpone taking the plaintiff away so that he could bring a little-trained canine to the arrest scene. Clewett, who himself had virtually no canine-handling training, then brought the dog, which Clewett knew had bitten someone on a previous occasion, into the immediate presence of the handcuffed plaintiff the dog was "tracking"; close enough to permit the dog to bite the plaintiff. A reasonable officer would understand that those facts constitute an objectively unreasonable seizure.

*Id*. at *3. Plaintiff here likewise alleges that the canine handler (Holland) permitted his dog to bite Plaintiff after Plaintiff already had been subdued.

Several courts have recognized that attacks by police canines who are improperly deployed by their handlers can constitute an excessive use of force. *See Campbell v. City of Springboro, Ohio,* 788 F. Supp.2d 637, 672 (S.D. Ohio Apr. 26, 2011) (finding a question of fact as to whether it was reasonable for an officer to allow a canine to bite a suspect for up to forty-five seconds before ordering the dog to stand down); *Watkins v. City of Oakland, Cal*., 145 F.3d 1087, 1089 (9th Cir. 1998) (affirming denial of summary judgment on an excessive-force claim involving a police dog where there was a question of fact as to whether the handler allowed the dog to bite the plaintiff for an unreasonable amount of time before he finally called off the dog); *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) ("[N]o particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control."); *Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991) (noting that "[w]e believe that a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum"); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1551-52, 1556-57 (11th Cir. 1989) (describing

incidents where use of dogs involved excessive force against suspects of minor and nonviolent crimes, and reinstating the plaintiffs' verdict based on unconstitutional city policy of inadequate training on use of dogs); *Marley v. City of Allentown*, 774 F. Supp. 343, 346 (E.D. Pa. 1991) (denying officer's motion for judgment as a matter of law because release of police dog to attack unarmed misdemeanor suspect who "possibly" had stopped fleeing "may be objectively unreasonable").

Based on the allegations in the Amended Complaint, the Court finds that Plaintiff states a colorable Fourteenth Amendment excessive-force claim under Section 1983 against Holland in his individual capacity. These allegations warrant further factual development.

Next, the Amended Complaint alleges that Lester, Cavis, and McCann witnessed the alleged assault and could have intervened but failed to do so. "Liability can arise from inaction. Indeed, 'there are circumstances under which police officers can be held liable for failure to protect a person from the use of excessive force.'" *See Austin v. Ashcraft*, No. 1:22-cv-159, 2023 WL 6217096, at *5 (S.D. Ohio Sept. 25, 2023) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citations omitted)). An officer is liable for failure to prevent excessive force "when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citation omitted).

Crediting Plaintiff's version of events, Lester, Cavis, and McCann were present when Holland released the dog on Plaintiff or failed to call off the dog before it bit Plaintiff. Lester, Cavis, and McCann would have known that, during some or all that time, Plaintiff was subdued and thus unable to protect himself. It is not unreasonable to conclude that the assault lasted long enough for Lester, Cavis, and McCann to have had the opportunity and means to prevent the assault

and ensuring injuries from occurring or continuing. Thus, the Court concludes that the Amended Complaint states colorable excessive-force claims based on their failure to intervene against Lester, Cavis, and McMann in their individual capacities. These Section 1983 claims, too, will proceed.

## II. CONCLUSION

Having conducted the screening required by the PRLA, the Court finds that the allegations of the Amended Complaint state colorable excessive-force claims under Section 1983 against Defendants Holland, Cavis, McCann, and Lester in their individual capacities. This action shall proceed as to those claims and Defendants.

However, the official-capacity claims against Defendants Holland, Cavis, McCann, and Lester (which are actually claims against Metro) fail to state Section 1983 claims upon which relief can be granted. Those claims are **DISMISSED**.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons (AO 440) and USM 285 form) for Defendants Holland, Cavis, McCann, and Lester. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the date of entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE